# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3995 | **DATE** | 5/22/2000 |
| **CASE TITLE** | Harriet Rizzo vs. Michael F. Sheahan | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant's Motion for Summary Judgment [34-1] is granted. The Clerk is directed to enter a Rule 58 judgment in favor of Defendant and against Plaintiff. The Clerk is further directed to terminate this case.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | **2** number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 23 2000 date docketed | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| KMK courtroom deputy's initials | | date mailed notice | Document Number |
| | | | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HARRIET RIZZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 97 C 3995 |
| | ) | |
| MICHAEL F. SHEAHAN, in | ) | Magistrate Judge Nan R. Nolan |
| his official capacity as Sheriff, | ) | |
| of Cook County, Illinois | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
MAY 23 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Harriet Rizzo, a former employee of the Cook County Sheriff's Department ("Sheriff's Department"), brings this action against Michael F. Sheahan, Sheriff of Cook County at all times relevant to this matter. Rizzo alleges that Michael Mahon, her immediate supervisor at the Sheriff's Department, sexually harassed her and retaliated against her for opposing discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981a and § 2000e et seq. Defendant Michael F. Sheahan moves for summary judgment. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

# I. **FACTUAL BACKGROUND**[1]

## A.     **The Parties**

Between February 1, 1985 and February 3, 1994, the effective date of her termination, Rizzo was employed by the Sheriff's Department. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 3. Rizzo worked as a deputy sheriff in the Sheriff's Department of Community Supervisor and Intervention ("DCSI"), Electronic Monitoring Unit ("EMU") between July 15, 1991 and January 19, 1994. Id. ¶ 4. Harriet Rizzo has also been known as Harriet Wagner, Harriet Borowiec, Harriet Nuzzo, and Harriet Gnech. Id. ¶ 5. Michael Sheahan was at all times relevant to this matter the duly elected Sheriff of Cook County. Id. ¶ 2.

## B.     **Rizzo's Allegations of Sexual Harassment**

Rizzo alleges that at some unidentified date in 1992 or 1993, Assistant Chief Michael Mahon, her immediate supervisor, watched her walk past him and stated "I wish I was Rizzo." Plaintiff's Local Rule 12N(3)(a) Statement ¶ 28. Rizzo understood Mahon to be referring to her then husband, Joe Rizzo. Id. At her deposition in this matter, Rizzo stated that she could not recall the date when Mahon made the above comment. Id ¶ 31. Rizzo testified that "she was making copies at the time and [Mahon] walked out and looked at [her] and goes boy, Rizzo, I wish I was Rizzo, something like that." Id. Rizzo alleges that Mahon made other comments like the "I wish I was Rizzo" comment but fails to specify when these alleged comments were made. Plaintiff's Local Rule 12N(3)(b)

---

[1] The following facts are taken from the parties' Local Rule 12(M) and 12(N) Statements and accompanying exhibits and are undisputed unless indicated otherwise.

Statement ¶ 7.[2]  In her affidavit of April 30, 1993 filed with the Illinois Department of Human Rights, Rizzo alleged that Mahon "repeatedly made rude, lewd and humiliating comments towards" her or in her presence.

During the Sheriff's investigation of Rizzo's allegations of sexual harassment, Rizzo told investigator Barbara Bennett that one morning at work on an unidentified date Mahon told her that he had seen her mother and daughter at a restaurant the night before.  Plaintiff's Local Rule 12N(3)(a) Statement ¶ 35.  Rizzo claims that Mahon stated "boy would I like to fuck her" referring to Rizzo's daughter.  Id.  At her deposition, Rizzo testified that in 1992, Mahon approached her shortly before she was getting off work, noticed her daughter waiting for her, and asked the other officers present who the young woman was.  Id. ¶ 36.  After someone identified the young woman as Rizzo's daughter, Mahon allegedly stated: "I'd like to fuck her."  Id.[3]  According to Rizzo, she told Mahon that his comments regarding her daughter were unwelcome.  Plaintiff's Local Rule 12N(3)(b) Statement ¶ 9.

Rizzo alleges that after Mahon made one of the above comments regarding her daughter, her husband complained to Chief Ricci.  Plaintiff's Local Rule 12N(3)(b) ¶ 11.  The record is unclear concerning exactly when Rizzo's husband spoke with Chief Ricci.  Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶¶ 10, 11.  In February 1993, Rizzo complained to one of her chiefs

---

[2] Mahon denies stating that he wished he was Rizzo's husband.  Plaintiff's Local Rule 12N(3)(a) Statement ¶ 26.

[3] Rizzo's complaint alleges that Mahon made the comment regarding her fifteen year old daughter on or about February 18, 1993.  Plaintiff's Local Rule 12N(3)(a) Statement ¶ 34.  Mahon denies making the alleged comments regarding Rizzo's daughter.  Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶¶ 3-5.

in the EMU that Mahon sexually harassed her. Id. ¶ 12. On March 9, 1993, Rizzo submitted a memorandum to Chief Randy Pietrowski of the EMU alleging that Mahon had harassed her. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 23. Rizzo's memorandum alleged that "threats and harassment started sometime in the fall of 1992," and that other unnamed personnel in the EMU told Rizzo: "Chief Mahon state [sic] that he would Fuck with [her] because He doesn't like Joe Rizzo," and that Mahon said "things" to her. Id. ¶ 24. Rizzo's memorandum also stated that Mahon "made a remark to me about my 15 year old daughter that he would like to Fuck her." Id. Rizzo further claims that she complained to the Sheriff about Mahon's comment that he wanted to have sexual relations with her daughter and about her internal complaint of sexual harassment. Plaintiff's Local Rule 12N(3)(b) Statement ¶ 13. Rizzo alleges that the Sheriff encouraged her to pursue her complaint with the Internal Investigation Division. Id.[4]

## C. The Sheriff's Sexual Harassment Policy

Between November 1, 1991 and April 24, 1994, the Cook County Department of Corrections' sexual harassment policy contained in General Order 3.7A applied to DCSI personnel. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 37. General Order 3.7A describes the sexual harassment complaint procedure and instructs the complaining employee to notify his or her immediate supervisor in writing of any perceived harassment. Id. ¶ 38. If the employee's immediate supervisor is the alleged harasser, the employee is directed to notify the next person in the chain of command. Id. The order further indicates that the supervisor shall initiate a review of

---

[4] The Sheriff denies that Rizzo approached him and complained that Mahon had stated he wanted to have sexual relations with her daughter. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 13.

the charges and notify Internal Affairs. Id. Rizzo was aware of General Order 3.7A and testified that she followed the chain of command described within the order when she filed a complaint against Mahon. Id. ¶ 39.

**D.    Sexual Harassment Investigation**

The Internal Investigations Division ("IID") of the Cook County Department of Corrections conducted an investigation of Rizzo's allegations of sexual harassment concerning Mahon. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 40. Between March 31, 1993 and May 10, 1993, Investigator Barbara Bennett interviewed Harriet Rizzo, Michael Mahon, Joe Rizzo, Jennifer Simpson (Rizzo's daughter), Harriet Nuzzo (Rizzo's mother), and ten other individuals in connection with her the investigation of the sexual harassment charges. Id. ¶ 41. Investigator Paul Beckman was present in May 1993 when Rizzo gave a statement to IID regarding her sexual harassment complaint. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 31.

In a case report dated May 4, 1993, Investigator Bennett concluded:

Assistant Chief Michael Mahon has a strong dislike and animosity against Investigator Harriet Rizzo's Husband, Joe Rizzo, and has succeeded in directing his hostility against Joe Rizzo through his Wife, Harriet Rizzo, which by his conduct has the purpose and the effect of unreasonably interfering with Harriet Rizzo's work performance and creating an intimidating, hostile and offensive working environment.

Although it is clear that this Investigator is unable to sustain the Charges of sexual harassment against Assistant Chief Michael Mahon as it is written under the General Order 3.7A, it is clear that Assistant Chief Mahon is unable to perform effectively, fairly and with reason as Assistant Chief of the E.M.U., therefore his appointment to that position should be seriously reconsidered.

Based on the information obtained through this Investigation, this Investigator would classify the Charges in this Case as "Simple Harassment," with the understanding that there are no General Orders written that would sustain that Charge.

Therefore, the evidence that is presented in it's present state is such that it is recommended that this Investigation be classified as:

"INCONCLUSIVE"

Insufficient evidence to either prove or disprove the Allegation.

Plaintiff's Local Rule 12N Statement, Exh. H. Mahon was not demoted, did not receive a pay decrease, was not suspended or put on probation, was not told that he would be reprimanded, and his rank was not changed as a result of the Sheriff's investigation of Rizzo's claim of sexual harassment. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 16.

**E.     Rizzo's Allegations of Retaliation**

Shortly after Rizzo complained of sexual harassment to her superiors, Assistant Acting Deputy Director David Dioguardi visited Rizzo at her house regarding her complaint of sexual harassment. Defendant's Reply to Plaintiff's Local Rule Statement 12N(3)(b) Statement ¶ 21. The parties present different versions of what occurred at that meeting. Rizzo claims that Chief Dioguardi told her that she would be fired if she pursued her complaint. Plaintiff's Local Rule 12N(3)(b) Statement ¶ 21. The Sheriff claims that Dioguardi visited Rizzo at her home to gather additional information concerning her complaint for the Internal Affairs Division. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 21. According to the Sheriff, Dioguardi informed Rizzo that he would pass on her allegations and that an investigation would follow. Id. The Sheriff also maintains that Dioguardi asked Rizzo whether she thought a transfer to another department would help the situation and she responded that she did not want to transfer. Id.

Rizzo claims that on February 21, 1993, Mahon threatened to terminate her if she did not withdraw her internal complaint. Plaintiff's Local Rule 12N(3)(b) Statement ¶ 22.[5] Rizzo alleges that sometime after she made the internal complaint of sexual harassment, Mahon told her that he had a lot of clout and if she did not stop pursuing her sexual harassment complaint, he would ensure that she got fired. Id. ¶ 19. Rizzo further alleges that after she made her complaint, Mahon threatened to change her shifts to midnights or afternoons even though she needed to work days because of her daughter's schedule. Id. Rizzo also claims that after filing her internal complaint, she received threatening telephone calls at work and home telling her that she and her family would suffer if she did not withdraw her complaint of sexual harassment. Id. ¶ 20.[6]

Rizzo claims the following additional acts of retaliation occurred after she complained of sexual harassment: Mahon refused to allow her to take a lunch break, Mahon caused Rizzo be the last employee to take lunch, Mahon made Rizzo work late, Rizzo received two disciplinary warnings, and Rizzo was transferred to another facility. Plaintiff's Local Rule 12N(3)(b) Statement ¶¶ 23-25.[7] Rizzo relies on her deposition testimony and charge of discrimination to support her allegation that she received two disciplinary warnings and was transferred to another facility after complaining of sexual harassment. Neither her deposition nor her charge of discrimination provides

_____

[5] Mahon denies threatening to terminate Rizzo. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 22.

[6] Mahon denies threatening to fire Rizzo or change her schedule. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 19. Mahon also denies making or instructing anyone to make threatening telephone calls to Rizzo. Id. ¶ 20.

[7] Mahon denies engaging in any of the acts of retaliation described by Rizzo. Defendant's Local Rule 12M(3) Statement ¶¶ 23-25.

specific dates for the disciplinary warnings and transfer. The Sheriff contends that Rizzo was transferred out of the EMU effective January 19, 1994 as a result of an investigation into alleged misrepresentations concerning her educational background. Id. ¶ 25.

**F.    Rizzo's Educational Background**

When Rizzo applied to the Merit Board for appointment to the Sheriff's Office as a deputy sheriff, she completed both an employment application and a personal history questionnaire. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 10. The first page of the application indicates that Rizzo graduated from Gage Park High School in 1977. Id. ¶ 11. On page 2 of her application, Rizzo stated "No" concerning whether she graduated from Gage Park High School. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 40. The next line on page 2 of the application states that Rizzo received a GED certificate in 1979 from Daley College. Defendant's Local Rule 12M Statement, Ex. A(2). Rizzo denies writing that she had received a GED in 1979 from Daley College on her application. Rizzo dep., p. 25. Rizzo signed the application certifying that:

> All answers made by me in this form, and any attachments, are true and correct to the best of my knowledge. I am aware that any willful misstatement of fact or willful withholding of information on this form will disqualify me, or if appointed, will be cause for immediate dismissal from the Cook County Sheriff's Office.

Plaintiff's Local Rule 12N(3)(a) Statement ¶ 12; Defendant's Local Rule 12M Statement, Ex. A(2).

On the personal history questionnaire, Rizzo stated that she attended but did not graduate from Gage Park High School and that she received a GED from Daley College between 1978 and 1979. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 13. Rizzo signed the personal history questionnaire attesting that she had read the last page and that her answers to the contents of the questionnaire were truthful. Id. ¶ 14.

During the fall of 1992, Richard Stilling, then Inspector General for Cook County, directed Paul Beckman, an investigator for the Inspector General's Office of the Sheriff's Department, to conduct educational background checks on various employees in the Sheriff's Office. Plaintiff's Local Rule 12N(3)(a) Statement Id. ¶ 15. Harriet Borowiec was one of these employees. Id. ¶ 16. Borowiec's name appeared on the first list of employees suspected of misrepresenting their educational backgrounds which Investigator Beckman received in September 1992. Investigator Beckman supplemental aff. ¶ 3. Shortly after receiving the initial list of employees, Investigator Beckman requested the personnel files of such employees from the Merit Board. Id. ¶ 4. During his investigation, Investigator Beckman found a GED certificate dated June 4, 1979 for Harriet Wagner in Rizzo's personnel file. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 17.

On September 15, 1993, Investigator Beckman interviewed Rizzo regarding her educational background. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 18. During the interview, Rizzo produced a GED certificate with the name Harriet G. Nuzzo dated November 3, 1976. Id. When Investigator Beckman showed Rizzo a copy of the GED certificate bearing the name Harriet Wagner, Rizzo stated that she did not know how it got into her personnel file. Id. Rizzo testified that during Investigator Beckman's investigation of her educational background, he took her original GED certificate for copying, told her that the copier was broken, and did not give her back the original GED certificate. Plaintiff's Local Rule 12N(3)(b) Statement ¶ 36. Joseph Fogarty, director of the GED testing program in Cook County, was unable to locate a record of a GED certificate having been issued to "Nuzzo" or "Borowiec." Plaintiff's Local Rule 12N(3)(a) Statement ¶ 20.

Investigator Beckman interviewed 30 to 40 of the over 100 Sheriff's Department employees with alleged questionable educational backgrounds. Defendant's Reply to Plaintiff's Local Rule

12N(3)(b) Statement ¶ 32. Investigator Beckman was not the only investigator to interview or take statements from employees who were suspected of having false test results and educational credentials. Id. Before taking a statement from Rizzo regarding her educational qualifications, Investigator Beckman knew that she had complained of being sexually harassed by Mahon. Defendant's Reply to Plaintiff's Local Rule 12N(3)(a) Statement ¶ 33. The Sheriff's sexual harassment policy states that the Sheriff's Office will observe "strict confidentiality" and "[o]nly those who have an immediate need to know may become privy to the identities of the parties." Id. ¶ 34; Defendant's Local Rule 12M Statement, Ex. A(9). Investigator Beckman testified that "[i]t's not an uncommon practice for another investigator to sit in during a statement." Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 35. Investigator Beckman also stated that he had attended a few hundred statements. Id.

During Sheriff Michael Sheahan's tenure, which began in December, 1990 and prior to Rizzo's promotion to the EMU, all investigators in EMU have come from the ranks of police officer, correctional officer, and court services. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 37. Since 1975, all applicants for the police officer and correctional officer positions have been required to be a high school graduate or have a certificate of high school equivalency. Id. Since 1985, all new court services employees have been required to be a high school graduate or have a certificate of high school equivalency. Id. Sheriff's Department police officers, correctional offices and full-time court service deputy sheriffs who do not meet the current educational requirements but were certified for appointment before the Merit Board enacted the present educational requirements have been allowed to continue to serve in their positions. Id. ¶ 38.

**G.     Events Leading to Rizzo's Termination**

On February 2, 1994, the Sheriff suspended Rizzo without pay pending the outcome of the Merit Board Hearing concerning her educational background. Defendant's Reply to Plaintiff's Local Rule 12N(3)(b) Statement ¶ 26. The Sheriff's Merit Board held a hearing on June 28, 1994. Defendant's Local Rule 12M Statement, Ex. P. James P. Nally, Arthur R. Waddy, Paula M. Daleo, Terrence Haley, and Michael D. Carey were the Merit Board Members who considered the allegations concerning Rizzo's educational background. Defendant's Local Rule 12M Statement, Ex. A(5). The following witnesses testified at the hearing: Investigator Beckman, Joseph Fogarty, Harriet Rizzo, Delores Pero (Rizzo's sister), Joseph Rizzo (Rizzo's husband), and Harriet Nuzzo (Rizzo's daughter). Defendant's Local Rule 12M Statement, Ex. P. Pero, Joseph Rizzo, and Nuzzo testified that they had seen a GED certificate for Harriet Nuzzo. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 19.

On December 6, 1994, the Cook County Sheriff's Merit Board found that Rizzo violated the Merit Board's rule requiring a high school diploma or a certification of equivalent formal education to be eligible for certification for the deputy sheriff position and made a false statement of fact by indicating on her employment application that she was a high school graduate or that she had a certificate of equivalent formal education. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 21; Defendant's Local Rule 12M Statement, Ex. A(5). The Merit Board ordered that Rizzo "be and is terminated from employment for cause, effective February 3, 1994." Id. On May 20, 1996, Illinois Circuit Court Judge Thomas Durkin affirmed the Merit Board's decision dismissing Rizzo. Plaintiff's Local Rule 12N(3)(a) Statement ¶ 22. Rizzo appealed the Circuit Court's decision. Id. On December 22, 197, the Illinois Appellate Court affirmed. Id.

-11-

## II. <u>DISCUSSION</u>

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A party opposing a properly supported motion for summary may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Id. at 256.

The Sheriff raises two arguments in support of his summary judgment motion: (1) Rizzo fails to establish a prima facie case of hostile work environment because the alleged incidents were single and isolated and (2) Rizzo cannot establish a prima facie case of retaliation because her termination was initiated before the alleged sexual harassment occurred and she was fired for cause. The Court will address each argument in turn.

## A.      <u>Sexual Harassment</u>

Title VII prohibits sexual harassment that is sufficiently "severe or pervasive" to "alter the conditions of [the victim's] employment and create an abusive working environment." Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2283 (1998) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). However, "isolated and/or trivial remarks of a sexual nature do not satisfy the definition of sexual harassment." Rennie v. Dalton, 3 F.3d 1100, 1107 (7th Cir. 1993), cert. denied, 510 U.S. 1111 (1994); see also Faragher, 118 S.Ct. at 2283 (stating that "'simple teasing,' offhand

comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). The Court must consider the totality of the circumstances in determining whether the Rizzo's work environment was hostile within the meaning of Title VII, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993). These factors must be evaluated from a subjective and objective perspective. Id. at 21-22. In this Circuit, there is a "safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex." Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996).

Accepting all of Rizzo's allegations as true, Mahon's conduct was not so severe or pervasive as to create an objectively hostile work environment. Here, Rizzo alleges that on two occasions, Mahon stated that he would "like to fuck" her fifteen year old daughter. While Mahon's comments were undeniably inappropriate, the comments were isolated and not directed at Rizzo. The Seventh Circuit has recognized that the "impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff." Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1144 (7th Cir. 1997). Rizzo also alleges that at some unidentified date in 1992 or 1993, Mahon watched her walk past him and stated "I wish I was Rizzo" and made many comments like the "I wish I was Rizzo" comment. Mahon's alleged "I wish I was Rizzo" statement is ambiguous and not

clearly sexual in nature.[8] However, on a motion for summary judgment, ambiguities are resolved against the moving party. Viewing the evidence in Rizzo's favor, the Court infers that Mahon meant he wished he was Rizzo's husband so he could engaged in sexual activity with Rizzo.

A one time statement of "I wish I was Rizzo" together with other similar comments over an undefined period of time and the two comments directed towards Rizzo's daughter are insufficient to establish an objectively hostile work environment and thus, fall within the Seventh Circuit's safe harbor. Mahon did not touch Rizzo, did not invite her to have sex with him or to go on a date with him, did not threaten her, did not expose himself or show her dirty pictures. Baskerville v. Culligan Intern. Co., 50 F.3d 428, 431 (7th Cir. 1995). Mahon and Rizzo were never alone outside of the office. Id. Moreover, Rizzo's allegation that Mahon repeatedly made rude, lewd, and humiliating comments toward Rizzo or in her presence, without more specific facts, is insufficient to establish that Mahon's comments created an objectively hostile work environment. Rizzo has not established that the comments were sexual in nature or directed toward her because of her sex and that the comments altered the conditions of her working environment.[9]

---

[8] Although the comments need not have a sexual content or connotation to establish sexual harassment, Rizzo has not shown that the comments were directed towards her because of her sex and that the comments were so objectively offensive as to alter her working conditions. Oncale v. Sundowner Offshore Services, Inc., 118 S.Ct. 998, 1002-1003.

[9] Rizzo relies on Lancaster v. Sheffler Enterprises, 19 F. Supp.2d 1000 (W.D. Mo. 1998) to support her claim that Mahon's comment regarding wanting to have sexual intercourse with her daughter is conduct severe enough to constitute sexual harassment. The Lancaster court held:
> Defendant presented several facts, that if read alone, would seem to place the plaintiff's claim in the "simple teasing" category. However, the plaintiffs set forth additional facts that raise genuine issues of material fact. References to having sex with the plaintiff's unborn child, if proven true, are undoubtedly hostile, abusive, and extremely serious. In viewing "all of the circumstances," the sexual comments alleged by the plaintiff amount to much more than "isolated incidents."

-14-

The Seventh Circuit has reached the same conclusion in cases involving more egregious facts. For example, in <u>Baskerville</u>, 50 F.3d at 430-31-, the Seventh Circuit held that the plaintiff's supervisor had not engaged in actionable sexual harassment where over a seventh month period he: (1) called the plaintiff a "pretty girl," (2) once made a grunting sound when the plaintiff wore a leather skirt, (3) told the plaintiff that his office was not hot "until you stepped your foot in here," (4) stated that a public address announcement asking for everyone's attention meant that "all pretty girls [should] run around naked," (5) once called plaintiff a "tilly" explaining that he used the term for all women, (6) told plaintiff that his wife warned him to "clean up" his act and to think of plaintiff as Ms. Anita Hill, (7) told plaintiff he left the office Christmas party early because there were so many pretty girls and he "didn't want to lose control," (8) once when plaintiff complained that his office was "smokey," he replied "Oh really? Were we dancing like in a nightclub?" and (9) alluded to his wife's absence from town and his loneliness, stating that he had only his pillow for company while making an obscene gesture intended to suggest masturbation. See also <u>Saxton v. American Tel. & Tel. Co.</u>, 10 F.3d 526, 534 (7th Cir. 1993) (holding that an unwanted rubbing of the plaintiff's thigh, a forced kiss and an attempted grab by the alleged harasser did not create a hostile work environment); <u>Weiss v. Coca-Cola Bottling Co.</u>, 990 F.2d 333, 337 (7th Cir. 1993) (holding no actionable harassment where plaintiff's supervisor repeatedly asked the plaintiff for dates, placed signs which read "I love you" in her work area, called her a "dumb blonde," placed his

_____

Lancaster, 19 F. Supp.2d at 1002. The Court finds the <u>Lancaster</u> opinion unpersuasive because, with the exception of the comment regarding plaintiff's unborn child, it fails to reveal the "several facts" presented by the defendant, the "additional facts" raised by the plaintiff, and "all of the circumstances" considered by the court.

hands on her shoulder several times, and attempted three times to kiss her).[10]

## B.    Retaliation

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he [or she] has opposed any practice made an unlawful employment practice [by Title VII]." 42 U.S.C. § 2000e-3(a).  The parties agree that to establish a prima facie case of retaliation, Rizzo must show that: 1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; (3) and there is a causal link between the protected expression and the adverse action.  Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000).  If Rizzo establishes a prima facie case of retaliation, the burden shifts to the Sheriff to produce a legitimate, nonretaliatory reason for the termination or adverse action.  Id.  If shown, the burden then shifts back to Rizzo to show that the Sheriff's proffered explanation is merely a pretext for retaliation.  Id.

Rizzo meets the first two prongs of her prima facie case with respect to her termination, and the Sheriff has set forth a legitimate, nondiscriminatory reason for terminating Rizzo.  The Sheriff terminated Rizzo for violating the Sheriff's Merit Board rule requiring that deputy sheriffs be a high school graduate or have certification of equivalent formal education and for misrepresenting on her employment application and questionnaire that she was a high school graduate or had a certificate of equivalent formal education.  Here, there is no need to analyze the third prong of the prima facie case and pretext separately.  Rizzo's assertion that a casual link exists between her firing and her protected expression overlaps with the pretext inquiry.  Thus, the following analysis focuses on

---

[10] Because Mahon's alleged conduct did not rise to the level of sexual harassment, the Court need not reach the issue of the Sheriff's liability for the conduct of Mahon.

whether Rizzo has met her burden of demonstrating that the Sheriff's stated reasons for terminating her was a pretext for retaliation.

"Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" Wolf v. Buss (America), Inc., 77 F.3d 914, 919 (7th Cir. 1996). Thus, "[t]he issue of pretext does not address the correctness or desirability of [the] reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." Miller, 203 F.2d at 1008-1009.

Rizzo relies on the following evidence in support of her claim of retaliation: (1) Mahon told Rizzo that he had a lot of clout and would see that she got fired; (2) Mahon threatened to change her shifts; (3) Rizzo received threatening telephone calls demanding that she withdraw her complaint of sexual harassment; (4) Dioguardi visited Rizzo at home and was mad and "screaming loud" when he told Rizzo she would get fired if she did not stop pursuing her complaint of sexual harassment; (5) Mahon refused to let Rizzo take lunch or made her the last employee allowed to go to lunch; (6) Mahon made Rizzo work late; (7) Rizzo was suspended without pay pending the outcome of the Merit Board hearing; (8) the investigation regarding Rizzo's educational background did not begin until after she complained of sexual harassment and only 30 to 40 of the over 100 individuals suspected where interviewed; (9) Rizzo was not interviewed regarding her educational background until after she gave her statement concerning her claim of sexual harassment; (10) Investigator Beckman was present at Rizzo's statement regarding her sexual harassment complaint; (11) Investigator Beckman's knowledge of Rizzo's sexual harassment complaint appears to violate the Sheriff's confidentiality policy; (12) Rizzo was successfully performing her job when terminated; (13) the Sheriff allows other individuals who do not have a high school diploma or GED to work as

sworn officers and deputies; (14) Rizzo should have been demoted to a different position which did not require a high school diploma or GED rather than terminated. No illegal motive can reasonably be inferred from any of the above evidence.

### 1.    Actions and Statements by Nondecisionmakers

Mahon's alleged comment that he had clout and would see that Rizzo got fired if she pursued her sexual harassment complaint does not establish pretext. "[S]tray remarks in the workplace . . . cannot justify requiring the employer to prove that its . . . decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); Eiland v. Trinity Hospital, 150 F.3d 747, 751 (7th Cir. 1998) (stating "when such statements are made by a nondecisionmaker, normally they cannot provide the basis for a determination of discrimination"). Rizzo has not shown that Mahon's remark in February 1993 was in any way related to the Merit Board decision to discharge her in December 1994. It is undisputed that the decision to discharge Rizzo was made solely by the Merit Board in December 1994. No evidence in the record indicates that Mahon participated in the decision to terminate Rizzo. Rizzo has failed to present evidence suggesting that the Merit Board members were motivated by a retaliatory motive or that they even knew of Mahon's alleged retaliatory motive. Rizzo has not presented any evidence linking Mahon's remark to the Merit's Board decision to fire her.[11]

---

[11] Rizzo relies on Azzaro v. County of Allegheny, 110 F.3d 968, 974 (3d Cir. 1997), to support her argument that it does not "matter that Ms. Rizzo's firing was effectuated by the Sheriff's Merit Board." Azzaro is easily distinguishable. In Azzaro, the plaintiff's discharge was approved by the Salary board. The Third Circuit found that "[w]hile there is no evidence that a majority of

Similarly, Rizzo's allegation that Dioguardi visited her at home and told her that she would

get fired if she did not stop pursuing her complaint of sexual harassment does not create a genuine

issue regarding pretext because the record lacks any evidence indicating that Dioguardi participated

in the decision to terminate to Rizzo.

Rizzo also alleges that Mahon threatened to change her shifts, refused to let her take lunch

or made her the last employee to go to lunch, and made Rizzo work late. Again, absent a nexus

between Mahon's actions and the decision to terminate Rizzo, his actions do not give rise to an

---

the Board's voting members had actual knowledge of Azzaro's reports [of sexual harassment] when they approved the reorganization [and Azzaro's discharge], this does not preclude Azzaro from recovering on her Title VII retaliation claim." Azzaro, 110 F.3d at 974. However, Azzaro presented evidence from which it could be reasonably inferred that Tom Foerster (County Commissioner and a member of the Salary Board), Harry Kramer (executive assistant to Foerster), Wayne Fusaro (the alleged harasser), and George Braun (the individual who submitted the proposal to reorganize the department and terminate Azzaro to Commissioner Foerster's office) knew of the harassment incident and of Azzaro's complaint of the harassment, agreed to "get" her, and included a provision in the reorganization to accomplish this covertly. Commissioner Foerster's office approved the reorganization plan and passed it on to the Salary Board. Azzaro also presented evidence indicating that the Salary Board routinely approved proposals to save the County money. Finally, Azzaro demonstrated that no one else in the recent history of the County had been terminated in the way Azzaro was discharged and that the reorganization plan resulting in her termination was merely a cover for an illicit motive.

While there is evidence here that the Merit Board has always terminated in cases brought by the Sheriff's Department alleging lack of a high school diploma or GED (Flaherty dep., 16), this evidence alone is not enough to suggest pretext in this case. In sharp contrast to Azzaro where the events leading to the plaintiff's termination occurred less than a year after she complained of sexual harassment, it is undisputed here that Rizzo and over one hundred other employees were identified as having misrepresented their educational backgrounds long before she complained of sexual harassment. Moreover, unlike Azzaro, Rizzo has failed to present any evidence indicating that any member of the Merit Board or any individual the Merit Board relied on possessed any retaliatory motive. Mahon, the only individual who allegedly possessed a retaliatory motive, was not a member of the Merit Board and did not testify before the Merit Board. Moreover, there is no evidence in the record suggesting that Investigator Beckman and Fogarty, the only witnesses to testify before the Merit Board who were unrelated to Rizzo, even knew Mahon or about his retaliatory comments.

inference of retaliation. <u>Jardien v. Winston Network, Inc.</u>, 888 F.2d 1151, 1155 (7th Cir. 1989) (holding "that actions and comments by employees not involved in a discharge decision cannot provide a basis for charging other employees with discrimination."); <u>see also</u> <u>Williams v. Williams Elecs., Inc.</u>, 856 F.2d 920, 925 (7th Cir. 1988).

## 2. Threatening Telephone Calls

Rizzo's allegation that she received threatening telephone calls demanding that she withdraw her complaint of sexual harassment also fails to demonstrate pretext. Rizzo seems to suggest that Mahon was behind these misdeeds. However, there is no evidence in the record to support such an inference. More importantly, there is no evidence in the record indicating that any of the Merit Board members, the decisionmakers in this case, had anything to do with the threatening telephone calls.

## 3. Suspension Without Pay

In further support of her claim of pretext, Rizzo points out that she was suspended without pay pending the outcome of the Merit Board hearing. In her affidavit, Rizzo states that other employees, such as Mercedes Chester, Maria Salazar, and Cheryl Cobbal, were either permitted to work pending their hearings or suspended with pay. Rizzo affidavit also states that the Sheriff allows other individuals who do not have a high school diploma or GED to work as sworn officers and deputies. Rizzo's affidavit fails to establish a sufficient foundation for these statements. Thus, the Court disregards these statements for purposes of summary judgment.

Federal Rule of Civil Procedure 56(e) requires that affidavits offered in opposition to summary judgment "be made on personal knowledge, . . . set[ting] forth such facts as would be admissible in evidence, and . . . show[ing] affirmatively that the affiant is competent to testify to

the matters stated therein." Rizzo's affidavit falls short of this standard by failing to lay a proper foundation for these statements. Rizzo states: "Other employees of the Sheriff of Cook County who were facing charges of possible termination were either permitted to work pending their Merit Board hearings or were suspended with pay. Among those employees were Mercedes Chester, Maria Salazar, and Cheryl Cobbal." Rizzo's Aff. ¶ 3. Rizzo also states in her affidavit: "Other employees of the Sheriff of Cook County who have neither a high-school diploma nor a GED, and who the Sheriff's Department knows have neither a high-school diploma nor a GED, are working for the Sheriff of Cook County as sworn officers and deputies. Among these employees are Sherman Williams and Salisbury (whose last name I do not know)." Id. ¶ 4. These are the type of conclusory allegations that Rule 56 mandates should be disregarded on summary judgment. Hadley v. County of Du Page, 715 F.2d 1238, 1243 (7th Cir. 1983) (stating "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather is requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). Moreover, Rizzo's assertion, without any specific supporting facts, that her affidavit is based on her personal knowledge is not sufficient. Price v. Rochford, 947 F.2d 829, 832-33 (7th Cir. 1991).[12]

4.    **Investigation Leading to Rizzo's Discharge**

Rizzo's assertion that the investigation regarding her educational background did not begin until after she complained of sexual harassment is without any basis in fact. Rizzo first complained of sexual harassment in February, 1993. It is uncontested that beginning in September of 1992, the

---

[12] The Sheriff has presented evidence establishing that Mercedes Chesser and Cheryl Cobble were suspended without pay pending action of the Merit Board. Defendant's Supplemental Response to Plaintiff's Local Ruler 12N Statements of Material Facts, Ex. W.

Inspector General started giving Investigator Beckman lists of Sheriff's Department employees who were suspected of having false test results and educational credentials. The Inspector General directed Investigator Beckman to investigate the educational background of these employees. It is further undisputed that Harriet Borowiec's name was on the first list of employees he received in September 1992.

The fact that Investigator Beckman interviewed only a portion of individuals suspected of having false test results and educational credentials establishes nothing about pretext with respect to Rizzo's termination. Investigator Beckman was not the only investigator to interview or take statements from the Sheriff's Department employees who were suspected of having false test results and educational credentials. Beckman Aff., ¶6. Moreover, not all of the employees under investigation were interviewed because many resigned before an interview was conducted. Id. ¶ 7. Similarly, the fact that Rizzo was not interviewed regarding her educational background until after she gave her statement concerning her allegation of sexual harassment does not show a casual relationship or pretext. Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000) (stating "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second.")

### 5. <u>Lesser Discipline</u>

Rizzo also asserts that the Sheriff's failure to demote her to a different position which did not require a high school diploma or GED rather than terminate her employment is evidence of pretext. Without more, such as evidence that similarly situated employees who were found to have misrepresented their educational background and who had not complained of sexual harassment were demoted to positions which did not require a high school diploma or GED rather than terminated,

the Sheriff's failure to demote Rizzo does not show pretext.

Rizzo also claims that the Sheriff allows other individuals who do not have a high school diploma or GED to work as sworn officers and deputies and that some officers and deputies may have been grandfathered out of the requirement of a high-school diploma or GED. Rizzo has offered no evidence indicating that any other sworn officers and deputies do not have high school diplomas or GEDs. The Sheriff's Director of Personnel, Brian Flaherty, testified that some deputy sheriffs are appointed as investigators but could not recall at his deposition whether the position of investigator requires a high-school diploma or GED. Flaherty's affidavit clarifies that since December of 1990, all investigators in EMU have come from the ranks of police officer, correctional officer, and court services. Since 1975, all applicants for police officer and correctional officer have been required to be a high school graduate or have a certificate of high school equivalency. Since 1985, all applicants for court services have been required to be a high school graduate or have a certificate of high school equivalency. Rizzo has offered no evidence disputing Flaherty's statements.

Although it is uncontested that some of the Sheriff's Department officers and deputies may have been grandfathered out of the requirement of a high-school diploma or a GED because they were hired before the Merit Board took effect, this fact does not establish pretext because there is no evidence in the record indicating that Rizzo was entitled to be grandfathered out of the requirement. Furthermore, there is no evidence in the record indicating that others who misrepresented their employment background were not terminated.

### 6.    Rizzo's Job Performance

Rizzo also points out that she was successfully performing her job when terminated. Rizzo's assertion of generally satisfactory job performance does not create an issue of material fact as to

pretext. When an employer advances specific reasons for discharge, the employee's rebuttal evidence should focus on those reasons. LaMontagne v. American Convenience Prdts., Inc., 750 F.2d 1405, 1414 (7th Cir. 1984); see also Anderson v. Stauffer Chemical Company, 965 F.2d 397, 403 n.2 (7th Cir. 1992) (stating "[p]roof of generally adequate performance, however, may not be used to rebut a specific reason for discharge, and if the reason is deficient performance in one area, the plaintiff seeking to prove pretext must demonstrate adequate performance in that area.").

In LaMontagne, the employer stated the following reasons for the plaintiff's discharge: plaintiff had been "disrespectful of [the President of the company], criticized [the President] before sales and marketing people, did not keep the President informed of his travel arrangements, and instructed the sales and marketing people to keep information from [the President]." LaMontagne, 750 F.2d at 1414. In response, the plaintiff offered evidence that his job performance was satisfactory. The Seventh Circuit held that evidence that the plaintiff's job performance was generally satisfactory did not contradict the company's stated reasons for firing him. Id.

Similarly, whether Rizzo was successfully performing her job when she was terminated does establish that the Sheriff was lying when he stated that Rizzo was fired for violating the rules of the Sheriff's Merit Board requiring that deputy sheriffs be a high school graduate or have certification of equivalent formal education and for misrepresenting on her employment application and questionnaire that she was a high school graduate or had a certificate of equivalent formal education. Thus, evidence of satisfactory job performance was not relevant to the Sheriff's reasons for discharge.

## 7.  Investigator Beckman's Knowledge of Rizzo's Sexual Harassment Complaint

The remaining evidence offered by Rizzo does not demonstrate that the Sheriff's reason for terminating her is pretextual.  Rizzo points out that Investigator Beckman was present at Rizzo's statement regarding her sexual harassment complaint and Investigator Beckman's knowledge of Rizzo's sexual harassment complaint appears to violate the Sheriff's confidentiality policy. Knowledge of a complaint alone is not enough to infer a causal connection between the protected activity and Rizzo's termination.  Sanchez v. Henderson, 188 F.3d 740, 747 (7th Cir. 1999) (stating "[w]e have previously held, that as a matter of law, mere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive.")  Moreover, the process of investigating Rizzo's educational background began five months before she complained of sexual harassment complaint.[13]

---

[13] Rizzo's reliance on Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881 (7th Cir. 1996) is misplaced.  The plaintiff in Veprinsky alleged that the defendant company refused to rehire him in retaliation for his filing an EEOC charge.  The company claimed that it did not hire Veprinsky because the position required familiarity with AutoCAD design software and Veprinsky's resume disclosed no such familiarity. Veprinsky presented direct evidence that the decisionmaker regarding the rehire decision had a retaliatory motive.  Thus, the company had the burden of establishing by a preponderance of the evidence that it would not have rehired Veprinsky even if a desire to retaliate had not tainted its decisionmaking.  Id. at 893.  The Seventh Circuit stated:

> Although it is undisputed that AutoCAD was a stated requisite for the position that Veprinsky sought, there is no evidence that it was ironclad.  Employers typically identify a variety of requirements for any one position which vary in importance and flexibility. . . . So it may be the case that this was something other than a dispositive prerequisite.  In view of the other evidence suggesting that Veprinsky's pending EEOC charge contributed to Flour Daniel's decision not to interview him, whether the company inevitably would have rejected Veprinsky on lawful grounds was not a question that could not be answered on summary judgment.  It is for the factfinder to determine whether a desire to retaliate played a significant role in the company's decision not to rehire Veprinsky for the design position.  In this respect, then, we must reverse the grant of summary judgment in Flour Daniel's favor.

-25-

## 8.     Other Alleged Acts of Retaliation

Rizzo contends that the following pre-termination events are actionable retaliation in and of themselves:  (1) Mahon told Rizzo that he had a lot of clout and would see that she got fired; (2) Mahon threatened to change her shifts; (3) Dioguardi visited Rizzo at home and was mad and "screaming loud" when he told Rizzo she would get fired if she did not stop pursuing her complaint of sexual harassment; (4) Mahon refused to let Rizzo take lunch or made her the last employee allowed to go to lunch; (5) Mahon made Rizzo work late; (6) Rizzo was suspended without pay pending the outcome of the Merit Board hearing.  None of the above incidents, with the exception of Rizzo's suspension without pay, constitute an adverse employment action.[14]

The Supreme Court has held that an adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 118 S.Ct. 2257, 2268 (1998) (citing Crady v. Liberty Nat. Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)) (stating "[a] materially adverse change might be indicated by a

---

Veprinsky, 87 F.3d at 894.

Rizzo's claim that Veprinsky "is right on point for our case" is without merit.  Here, Rizzo does not have direct evidence of retaliation related to the termination decision.  Thus, unlike Vaeprinsky where the company bore the burden of demonstrating that it would have made the same decision absent a retaliatory motive, Rizzo bears the burden of demonstrating that the Sheriff Department's legitimate, nonretaliatory reason is a pretext for unlawful discrimination.  Evidence that the Sheriff Department's requirement of a high school diploma or GED was not ironclad with respect to deputy sheriffs would be relevant to the pretext analysis but Rizzo has failed to present such evidence.

[14] Rizzo also alleges that the threatening telephone calls demanding that she withdraw her complaint of sexual harassment constitute retaliation.  Threatening calls from an unidentified person are not as a matter of law an adverse action.

termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."). An adverse action is something more than "a mere inconvenience or an alteration of job responsibilities." Crady, 993 F.2d at 136; see also Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996) (stating "not everything that makes an employee unhappy is an actionable adverse action."). Treatment that has "little or no effect on an employee's job" does not constitute retaliation. Sweeney v. West, 149 F.3d 550, 556 (7th Cir. 1998). Rather, the alleged conduct must have some "tangible job consequence." Id.

The following actions alleged by Rizzo are not adverse: Mahon's comment to Rizzo that he had a lot of clout and would see that she got fired, Mahon's unexecuted threat to change Rizzo's shift, Dioguardi's comment to Rizzo that she would be fired if she continued to pursue her complaint, Mahon's refusal to let Rizzo take lunch or making her the last employee to go to lunch, and Mahon making Rizzo work late. See Ribando v. United Airlines, Inc., 200 F.3d 507, 511 (7th Cir. 1999) (holding placing a letter of concern or counseling in an employee's personnel file does not rise to the level of an adverse employment action); Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997) (holding verbal threat of being fired, reprimand for not being at assigned work station, a missed pay increase, and being placed on "final warning" do not constitute adverse employment actions); Crady, 993 F.2d at 136 (holding change in title and responsibilities from assistant vice president to loan officer was not a materially adverse action). None of these comments or actions significantly changed Rizzo's benefits, salary, job location, schedule, or responsibilities.

Finally, although Rizzo's suspension without pay constitutes an adverse action, she has not created a genuine issue of fact with respect to causation. Rizzo has failed to present any evidence

indicating a causal link between her complaint of sexual harassment and her suspension without pay. Rizzo first complained of sexual harassment in February, 1993. She was suspended without pay on February 2, 1994. A year lapse between her protected expression and the adverse action is insufficient by itself to establish causation. Sauzek, 202 F.3d at 918-19 (holding a three-month lapse between complaints of discrimination and employer's decision not to rehire plaintiffs did not create genuine issue of material fact regarding causation in a retaliation case).[15]

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. The Clerk is directed to enter a Rule 58 judgment in favor of Defendant and against Plaintiff. The Clerk is further directed to terminate this case.

**E N T E R:**

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

Dated: *May 22, 2000*

---

[15]Although Rizzo does not argue that her two disciplinary warnings and transfer to another facility constituted retaliation, any such claim would fail. Rizzo has not presented any evidence indicating that her protected expression and the disciplinary warnings and transfer were casually related other than the fact that one followed the other which is not enough. Sauzek, 202 F.3d at 918.